UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LES PARTINGTON,

                Plaintiff,

vs.                        Case No.  2:06-cv-310-FtM-29DNF

MICHAEL SCOTT, as Sheriff of Lee
County, Florida,

                Defendant.
_____

## OPINION AND ORDER

This matter comes before the Court on defendant's Motion for Summary Judgment (Doc. #18) filed on February 27, 2007, to which Plaintiff filed a Response (Doc. #29) on March 23, 2007.  Both parties submitted depositions and other exhibits in support of or in opposition to the motion.

### I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  Id.  The moving party

bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

## II.

The Court will adopt the facts as agreed in the Joint Final Pretrial Statement (Doc. #38, pp. 5-7), as supplemented by additional facts set forth herein. In essence, plaintiff Les Partington (plaintiff or Partington), a former Captain in the Lee County Sheriff's Office (LCSO), asserts that his employment was

terminated in violation of his First Amendment right of free speech. The speech involved Partington's contacts with Daryl Holton, an African-American Deputy Sheriff with the LCSO, concerning statements made by Captain Kamp at a meeting of other officers. Plaintiff asserts that his employment was terminated in retaliation for this protected speech. The Sheriff asserts that plaintiff was terminated for untruthfulness in his description of his contacts with Deputy Holton.

The parties have stipulated that pursuant to the Civil Service Act, an employee may appeal a termination or suspension to the Civil Service Board, which plaintiff did in this case. The Civil Service Board is required to determine if just cause exists to support the suspension or termination, and the Board's decision is binding on the Sheriff. <u>See</u> Ch. 99-434, § 13, Laws of Florida. The Lee County Civil Service Board upheld the Sheriff's decision in this case. Sheriff Scott has terminated five other individuals for substantiated violations of untruthfulness. The Sheriff is sued only in his official capacity.

**III.**

Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To establish a claim under § 1983, plaintiff must allege and prove that (1) defendant deprived him of a right secured under the Constitution or

federal law[1], and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). Plaintiff also must allege and prove an affirmative causal connection between defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001) (en banc); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995).

Under § 1983, a local government may not be held liable under a theory of *respondeat superior*, but instead may only be held liable for the execution of an official governmental policy or custom. Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003)(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)). Only government officers or groups who have final policymaking authority may subject the government entity to a § 1983 claim. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1312 (11th Cir. 2006).

## IV.

The Sheriff seeks summary judgment on six grounds: (1) Plaintiff did not engage in speech which was protected by the First Amendment; (2) plaintiff was terminated for untruthfulness, not his speech or association; (3) the Sheriff is not the final policymaker for purposes of the § 1983 claim; (4) the Pickering v. Board of

---

[1] Plaintiff's reliance on rights created by the Florida Constitution therefore cannot support a § 1983 claim.

Education, 391 U.S. 563 (1968) balancing test favors the Sheriff; (5) there is no issue of material fact regarding causation; and (6) defendant is entitled to sovereign immunity for the violation of the Florida Constitution claim embedded in the § 1983 Complaint. The Court need discuss only the first, third and sixth issues.

**A.**

The constitutional right at issue in this case is the First Amendment's right of free speech.  It is well-established that "[a] government employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her employment."  City of San Diego v. Roe, 543 U.S. 77, 80 (2004). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  Garcetti, 126 S. Ct. at 1957 (citations omitted). Accordingly, as a general matter, a government entity may not discipline a public employee in retaliation for protected speech. Mitchell v. Hillsborough County, 468 F.3d 1276, 1283 (11th Cir. 2006); Chesser v. Sparks, 248 F.3d 1117, 1122 (11th Cir. 2001).

"Although it is well-established that an employer may not discharge a public employee in retaliation for the employee's exercise of his right to freedom of speech, that right is not absolute."  Brochu v. City of Riviera Beach, 304 F.3d 1144, 1157 (11th Cir. 2002).  "The problem in any case is to arrive at a balance between the interests of the [employee] as a citizen, in commenting upon matters of public concern and the interest of the

State, as an employer, in promoting the efficiency of the public services it performs through its employees." <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563, 568 (1968).  Because of this governmental interest, "a governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public." <u>City of San Diego</u>, 543 U.S. at 80.

The Supreme Court has directed that the four-step <u>Pickering</u> and <u>Connick v. Myers</u>, 461 U.S. 138 (1983) test be applied to claims that a public employee's First Amendment rights were violated for work-related speech.  E.g., <u>City of San Diego</u>, 543 U.S. at 80; <u>Brochu</u>, 304 F.3d at 1157; <u>Cook v. Gwinnett County Sch. Dist.</u>, 414 F.3d 1313, 1318 (11th Cir. 2005); <u>McKinley v. Kaplan</u>, 262 F.3d 1146, 1149-50 (11th Cir. 2001); <u>Maggio v. Sipple</u>, 211 F.3d 1346, 1351 (11th Cir. 2000).  This test examines (1) whether the employee's speech is fairly characterized as constituting speech as a citizen on a matter of public concern, (2) whether the employee's interest in speaking outweighs the government's legitimate interest in efficient public service, (3) whether the speech played a substantial part in the government's challenged employment decision, and (4) whether the government has shown by a preponderance of evidence that it would have made the same employment decision in the absence of the protected conduct. <u>Battle v. Bd. of Regents</u>, 468 F.3d 755, 759-60 (11th Cir. 2006); <u>Chesser</u>, 248 F.3d at 1122-23; <u>Beckwith v. City of Daytona Beach</u>

-6-

Shores, 58 F.3d 1554, 1563-64 (11th Cir. 1995)(citing Bryson v. City of Waycross, 888 F.2d 1562, 1565-66 (11th Cir. 1989)).  The first two elements of this test are "questions of law designed to determine whether the employee's speech is protected by the First Amendment." Beckwith, 58 F.3d at 1564.  The final two elements are questions of fact "designed to determine whether a retaliatory motive was the legal cause of the challenged employment decision." Id.  See also Battle, 468 F.3d at 760.

Thus, to establish that he was fired in violation of the First Amendment, plaintiff must demonstrate: (1) that his speech was as a citizen addressing a matter of public concern; (2) that his interests as a citizen in commenting on the matters of public concern outweigh the legitimate interests of the County as an employer; and (3) that the speech played a substantial or motivating part in the County's decision not to promote, to discipline, and/or to fire him.  If plaintiff can establish all three elements, his claim will still fail if the County proves by a preponderance of the evidence that it would have fired him regardless of his speech. Akins v. Fulton County, Ga., 420 F.3d 1293, 1303 (11th Cir. 2005); Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1282 (11th Cir. 2005).

**(1)**

The threshold issue for the Court is to determine whether plaintiff's speech is protected by the First Amendment. See, e.g. Vila v. Padron, 484 F.3d 1334, 1339 (11th Cir. 2007); Brochu v.

-7-

City of Riviera Beach, 304 F.3d 1144, 1157 (11th Cir. 2002).  This requires the court to determine "whether the employee spoke as a citizen on a matter of public concern."  Garcetti, 126 S. Ct. at 1958.  If the answer is no, there is no viable First Amendment claim; if the answer is yes, there may be a viable First Amendment claim.  Garcetti, 126 S. Ct. at 1958.  See also Battle, 468 F.3d at 760; Ferrara v. Mills, 781 F.2d 1508, 1512 (11th Cir. 1986)("If the employee's speech cannot fairly be characterized as constituting speech on a matter of public concern, the inquiry is at an end.")  The burden of proof is upon plaintiff to demonstrate that his speech was as a citizen on a matter of public concern.  Ferrara, 781 F.2d at 1514; Morales v. Stierheim, 848 F.2d 1145, 1148 n.4 (11th Cir. 1988).

Speech involves a matter of public concern, and therefore is entitled to First Amendment protection, only if it can fairly be considered as relating to a matter of political, social, or other concern to the community.  Connick, 461 U.S. at 146; Akins, 420 F.3d at 1303.  This "must be determined by the content, form, and context of a given statement, as revealed by the whole record."  Mitchell v. Hillsborough County, 468 F.3d at 1283 (quoting Connick, 461 U.S. at 147-148).  A court must be mindful that an employee's speech is rarely entirely private or public, and that it is the "main thrust" of the speech that must be determined.  See Battle, 468 F.3d at 1283; Akins, 420 F.3d at 1303; Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993).  The fact that the speech occurred at

work and concerned the subject mater of plaintiff's employment are not dispositive.  Garcetti, 126 S. Ct. at 1959.  Rather, the controlling factor in such circumstances is whether the expressions were made pursuant to the employee's official duties.  Garcetti, 126 S. Ct. at 1959-60.  See also Gonzalez v. Lee County Housing Auth., 161 F.3d 1290, 1296 n.22 (11th Cir. 1998).  In deciding whether an employee's speech touched on a matter of public concern, the court asks "whether the 'main thrust' of the speech in question is essentially public in nature or private, whether the speech was communicated to the public at large or privately to an individual, and what the speaker's motivation in speaking was."  Mitchell, 468 F.3d at 1283 (citations omitted).

### (2)

The speech at issue involves two conversations between Partington and Daryl Holton, an African-American Deputy Sheriff with the LCSO.  Holton had attended a group meeting in 2005 where his supervisor Captain Kamp stated that "you don't want to get in trouble. You will end up in jail with Daryl's bigger brother." (Doc. #30-4, p. 7.)  The comment was made in the presence of at least forty individuals.  Holton was one of only two African-Americans present at the meeting.  Finding the comment "perplexing", Holton discussed it with Sergeants Sedwick and Rounsifer, who were in his chain of command.  Holton also reached

out to Partington and asked to meet with him.[2]  On or about August 11, 2005, Partington agreed and met with Holton on the side of the road at the scene of a traffic stop.  Holton relayed Kamp's comment to Partington who advised Holton to discuss the comment with Kamp. (Doc. #30-5, p. 17.)  Partington interpreted the request for advice as one coming from a friend.  (Doc. #30-5, p. 24.)

Sometime after the August 11, 2006 meeting, Partington encountered Holton's step daughter at a grocery store and inquired into how her step father was doing.  Partington proceeded to call Holton from his government issued cell phone, identifying himself "Les, Car 25, Captain Partington."  (Doc. #30-5, p. 29.)  During the call, Holton advised Partington that reporters were calling his home looking for a statement about Kamp's comment.  Partington advised Holton not to speak to the press, and asked him if he would like to join him at an Irish pub for a few drinks.  (Doc. #30-5, p. 31)  Partington reimbursed the LCSO for the telephone call.  (Doc. #30-5, p. 33.)

### (3)

Under the principles summarized above, the Court finds that the speech involved in the two conversations did not involve a matter of public concern.  The main thrust of the speech is related to plaintiff's work and cannot be construed as being public in nature.  Partington advised Holton about how to go about clarifying

---

[2] In the past, Partington was Holton's supervisor.  (Doc.#30-5, p. 9.)

the motivation behind the comment, and what other options were available including pursuing  the issue up the chain of command. (Doc. #30-5, p. 17.)  The speech was communicated only to Holton and not the public at large.  The Court rejects plaintiff's argument that speculation that he was responsible for relaying Kamp's comment to the press provided First Amendment protection for his conversations with Holton where none otherwise existed. Finally, by plaintiff's own admission, his motivation was to protect and defend the sheriff's office.  Specifically, Partington testified that "I want [Holton] to feel and know that that just doesn't exist at the sheriff's office."  (Doc. #30-5, p. 16.)  It is reasonable to expect a higher ranking officer such as Partington to advise a lower ranking officer, such as Holton on procedural issues as part of their responsibilities and as a representative of the sheriff.  Furthermore, while Partington testified he was not a supervisor, he stated that in his position of commander he "could give directions to anyone."  (Doc. #30-5, p. 19.)

Plaintiff further asserts that he is entitled to First Amendment protection under Cook v. Gwinnett County School Dist., 414 F.3d 1313, 1320 (11th Cir. 2005) which held that "public employees have a First Amendment right to engage in associative activity without retaliation."  Partington points to the fact that in the defendant's Statement of Undisputed Facts, it states that the internal affairs investigation was started as a result of his association with Holton.  (Doc. #29, p. 6.)  The Court finds that

this argument is without merit.  In <u>Cook</u>, the plaintiff was targeted for being a member of a union.  In the present case, it is not Partington's mere association with Holton which triggered the investigation but rather allegations of untruthfulness stemming form discussions between Partington and Ciresi.  (Doc. #27-4, p. 1.)  Furthermore, the investigation did not focus on either the professional or personal relationship between Partington and Holton, but on the content of their conversations.

Finding that Partington has no viable First Amendment claim under the first prong of the Pickering-Connick test, the Court need not address the remaining two prongs, and finds that summary judgment in favor of defendant is appropriate.

**B.**

It has long been the rule that under § 1983 a local government entity may only be held liable for the execution of an official governmental policy or custom promulgated by someone with final policymaking authority.  <u>Quinn</u>, 330 F.3d at 1325;  <u>Campbell</u>, 434 F.3d at 1312.  The decision maker is not always the same as the final policymaker because "final policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review."  <u>Quinn</u>, 330 F.3d at 1325 (citations omitted).  Meaningful administrative review has been found where there was review by a Career Service Council with the authority to order reinstatement or otherwise amend, alter, sustain or reverse the decision of the

employer, <u>Quinn</u>, 330 F.3d at 1326, and where there was review by a Civil Service Board with power to reverse termination decision, <u>Scala v. City of Winter Park</u>, 116 F.3d 1396, 1401-03 (11th Cir. 1997).

In this case, it is clear that the Sheriff was not the final policymaker.  As the parties have stipulated (Doc. #38, p. 7, ¶ 8), the Civil Service Board had the legal authority to review the Sheriff's termination decision, and its decision is binding on the Sheriff.  This stipulated fact precludes the Sheriff from being the final policymaker.

Plaintiff seeks to avoid this result.  Plaintiff first argues that the final policymaker issue had to have been raised as an affirmative defense, and the Sheriff's failure to do so precludes him from raising the matter in a summary judgment motion.  The Court disagrees.  It has long been the law that in order to impose liability upon the government entity plaintiff has to establish that defendant was the final policymaker.  <u>Manor Healthcare Corp. v. Lomelo</u>, 929 F.2d 633, 636-37 (11th Cir. 1991); <u>see also Templeton v. Bessemer Water Serv.</u>, 154 Fed. Appx. 759, 765 (11th Cir. 2005)(plaintiff must prove that defendant was final policymaker to establish a 1983 claim).  This is an element of the cause of action against a local government to be proven by plaintiff; the lack of such proof is not an affirmative defense. In any event, the Sheriff did raise his failure to execute a policy or custom as affirmative defense number 8, and identifies it as an

issue in the Pretrial Stipulation (Doc. #38, p. 9, ¶5).  The Court finds no surprise or prejudice results from allowing the issue to be raised in a summary judgment motion.

Plaintiff next argues that the Civil Service Board is merely a "rubber stamp" for the Sheriff, and in the last ten years or so "the Civil Service Board has never overturned a Sheriff's termination of a subordinate employee."  (Doc. #29, p. 10.) Plaintiff has cited no § 1983 case from the Eleventh Circuit which recognizes a "rubber stamp" exception to the rule where the decision maker is subject to administrative review with the legal authority to change the outcome.  The Court will assume that such an exception does exist, however, because the Eleventh Circuit has adopted such a rule in the similar context of Title VII employment discrimination cases.  Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999).

Plaintiff's problem, however, is that he points to no record evidence to support his rubber stamp theory.  While counsel states "the Civil Service Board has never overturned a Sheriff's termination of a subordinate employee," he points to no evidence in the record supporting the allegation.  Additionally, if the Civil Service Board finds just cause, it has no authority to overturn the severity of the discipline. Further, plaintiff points to no deficiency in the Civil Service appeal process, and does not claim that the Civil Service Board ratified the unconstitutional basis of the termination decision.  The Court concludes that the

-14-

Sheriff was not the final policymaker for § 1983 purposes.

**C.**

Defendant asserts that plaintiff's reliance upon the Florida Constitution must be rejected on sovereign immunity grounds. As plaintiff now concedes, Florida law does not allow tort claims for money damages based upon alleged violations of the Florida Constitution. Equitable relief, such as the reinstatement sought here, is available. Thus, to the extent that plaintiff includes a "free-standing" claim based upon a violation of the Florida Constitution, any money damage relief must be dismissed but the reinstatement relief may remain.

Since the Court will enter judgment in favor of defendant on the § 1983 claim, there is no remaining basis for federal jurisdiction. The Court will exercise its discretion under 28 U.S.C. § 1367(c) and decline to exercise jurisdiction over any state law claim that may be read into the complaint.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.   Defendant's Motion for Summary Judgment (Doc. #18) is **GRANTED** as to the claim under 42 U.S.C. § 1983 and the state law claim for money damages under the Florida Constitution, but is **DENIED** as to the state law claim for reinstatement.

2.   In the exercise of its discretion under 28 U.S.C. § 1367(c), the Court declines to exercise jurisdiction over the state

law claim for reinstatement and this portion of the case will be dismissed without prejudice.

3.  The Clerk shall enter judgment accordingly, terminate all deadlines, including the Final Pretrial Conference scheduled for September 17, 2007, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___28th___ day of June, 2007.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record